UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ELAINE SCOTT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. 4:09-CV-03039 MH |
| | § | |
| SCRIBD, INC. | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | § | |

## DEFENDANT SCRIBD, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS OR, IN THE ALTERNATIVE, TO DENY CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Scribd, Inc. hereby moves this Court for an order striking the class allegations from Plaintiff's Complaint filed September 18, 2009, or, in the alternative, for an order denying class certification. This motion to strike is brought pursuant to Federal Rules of Civil Procedure 12(f) and 23, on the grounds that Plaintiff's claims are manifestly unsuitable for class treatment.

The motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the pleadings, records, and papers on file in this action and such other papers as may be filed at or before the hearing on this motion; the oral arguments of counsel, and any other matters properly before the Court.

## INTRODUCTION

This is an action for copyright infringement brought by Plaintiff Elaine Scott, the author of an out-of-print book she claims was infringed by defendant Scribd, Inc. ("Scribd" or "Defendant"). For the reasons hereinafter set forth, Defendant requests that this Court strike the class claims from Plaintiff's Complaint, as they are facially defective.

The problems with Plaintiff's case are legion. In general, Plaintiff alleges that she has suffered damages because (1) a copy of her out-of-print book was uploaded to Scribd without her (or Scribd's) knowledge, and (2) upon the book's removal from Scribd's site at her request, information about the book was entered into the system Scribd has developed to try to prevent works identified as being unauthorized from appearing on Scribd a second time. Plaintiff makes no effort to quantify her surely *de minimus* actual damages. Instead, Plaintiff asserts class claims on behalf of a potentially enormous putative class of authors whose works Plaintiff claims Scribd has infringed, seeking actual and/or statutory damages from Scribd on behalf of this class.

Plaintiff's action cannot be certified as a class action as it does not comply with the requirements for class certification set out by Federal Rule of Civil Procedure 23(b). Plaintiff's attempts to certify a class under Rules 23(b)(1)(A) and (b)(2) ignore the Fifth Circuit's interpretations of those sections, which leave no doubt that class certification would be inappropriate under these facts. Finally, Plaintiff's attempt to certify a class under Rule 23(b)(3) must fail because class certification is simply not the superior means of resolving copyright infringement claims (1) that would require individualized inquiries regarding each class member in order to establish liability and the amount of damages; and (2) for which the Copyright Act provides significant incentives to individuals to bring suit on their own.

Scribd respectfully submits that class certification is manifestly inappropriate in this matter and requests that Plaintiff's class allegations be stricken from its Complaint.

## BACKGROUND AND SUMMARY OF THE ALLEGATIONS

### I.   SCRIBD, INC.

Scribd is the largest social publishing company in the world and the operator of one of the Internet's most popular websites, located at www.scribd.com (the "Website").  Compl. ¶ 17. The Scribd Website is a free online platform that allows any author to upload and publish documents such as academic papers, short stories and screenplays, which can then be read by people around the world.  Compl. ¶ 15.

A user uploads a document by visiting www.scribd.com, creating an account, and then selecting a document from her computer to upload and store on Scribd's servers.  Compl. at Ex. 2. Users control the content of those documents.  *Id.*  Generally speaking, once a user uploads a document to the Website, anyone with Internet access can view the document for free.  Compl. ¶ 15. Scribd does not charge a subscription fee or charge users to upload or view such documents. *Id.*

Although less than three years old, Scribd's Website is already enormously popular.  The Website has numerous legitimate uses, including self-publication of creative writing, facilitation of academic peer review, and publication of works in the public domain.  Compl. at Ex. 2. Scribd has partnered with numerous publishing companies, such as Harvard University Press, the Chicago Tribune, and Random House Publishing Group, which use the Scribd Website to share free excerpts of their content and, in some instances, sell full, electronic versions of their documents to users via Scribd's "Store" Website.  *Id.*  In short, the Scribd Website is a powerful tool that removes barriers between authors, publishers and readers.  *Id.*

## II.   SCRIBD'S EFFORTS TO PREVENT THE UPLOADING OF UNAUTHORIZED WORKS

Scribd does not want unauthorized works on its Website.  Compl. at Ex. 9.  Scribd's Terms of Use clearly prohibit the uploading of unauthorized works.  Further, Scribd includes information on the site that explains to users that any material infringing a copyright should not be uploaded to the Website.  *See* Compl, Ex. 9.  Scribd also complies with the requirements of 17 U.S.C. § 512 ("the Digital Millennium Copyright Act" or "DMCA").  Scribd has designated an agent to receive notification of claimed infringement and has provided the contact information of that agent to the United States Copyright Office.[1]  Compl. ¶¶ 35-36.  When a copyright holder notifies Scribd via that agent that a user has uploaded an unauthorized document, or when Scribd learns of such conduct through any other channel, Scribd acts expeditiously to remove the offending document.  Scribd also maintains a "three strikes" policy with respect to repeat infringers.  *See, e.g.*, Complaint, Ex. 10.

Additionally, Scribd maintains a copyright management system that goes beyond the requirements set forth by applicable law.  Scribd invites authors who are concerned about potential copyright infringement to upload their original works to the copyright management system.  Complaint, Exs. 12.  Thereafter, each time a user uploads a document to the Website, Scribd compares that document to the documents previously submitted to the copyright management system.  *Id*. at 7.  If there is a match, Scribd will remove the content from Scribd. *Id.*

---

[1] Plaintiff alleges that the address Scribd provides on its Website as the designated address for receipt of DMCA takedown notices differs from the address provided to the Copyright Office.  Compl. ¶¶ 35-36.  This is not true.  The previous difference in addresses was a temporary consequence of the fact that Scribd recently moved its corporate headquarters.  Scribd has updated its address with the Copyright Office, and all mail received at its old address was promptly forwarded to its new address.  Therefore, Scribd received and responded to all takedown notices sent to its old address after it moved.

## IV.   PLAINTIFF ELAINE SCOTT AND HER COMPLAINT

Plaintiff Elaine Scott is an individual who resides in Houston, Texas. Compl. at 2. She allegedly authored the book "Stocks and bonds: profits and losses: a quick look at financial markets" ("Stocks and Bonds"), which was published in 1985. On information and belief, Stocks and Bonds is currently out-of-print. Compl. ¶¶ 5-6. Plaintiff allegedly holds the copyright for Stocks and Bonds. Compl. ¶ 8.

Plaintiff filed her Complaint against Scribd on September 18, 2009. By agreement of the parties, Scribd's deadline to respond to the Complaint was subsequently extended to November 6, 2009. The Complaint alleges that a third-party user uploaded Stocks and Bonds to the Scribd Website without Plaintiff's permission and that Stocks and Bonds was subsequently viewed by other third-party users of the Website. Compl. ¶ 9.

Plaintiff also alleges that, when a copyright holder issues a takedown notice to Scribd, Scribd adds the copyrighted work in question to its copyright management system and subsequently compares newly-uploaded documents to the copyrighted work to ensure that the copyrighted work is not re-uploaded to the Website. Compl. ¶ 24.

Plaintiff alleges that she notified Scribd on July 23, 2009 that Stocks and Bonds had been uploaded to the Website without her authorization. Compl. ¶ 10. She does not allege that Scribd failed to remove Stocks and Bonds from the Website promptly, or that Scribd was aware prior to July 23, 2009 that Stocks and Bonds was copyrighted and had been uploaded without the copyright holder's authorization, or that Scribd ever charged its users to view Stocks and Bonds. Nonetheless, she alleges that the uploading of Stocks and Bonds by a third-party user constituted copyright infringement by Scribd, that the addition of Stocks and Bonds to Scribd's copyright management system also constituted copyright infringement, and that Scribd is not eligible for

the safe harbor from liability provided by the DMCA with respect to this alleged infringement. Compl. ¶¶ 53, 56.

## IV.     PLAINTIFF'S PROPOSED CLASS

Plaintiff is suing not only for herself, but on behalf of a nationwide class of authors who hold copyrights on works that allegedly have been infringed by Scribd.  Compl. ¶ 45.  Her proposed class consists of "every author who owned a valid registered copyright in a work infringed by Scribd."  Id.  Plaintiff alleges that questions of fact and law common to the class include:

> (1) does Scribd violate the Copyright Act when copyrighted works are uploaded, processed, stored, searched, and downloaded from their system without authorization of the copyright holder; (2) does Scribd violate the Copyright Act when copyrighted works are added to Scribd's copyright protection system without authorization of the copyright holder; and (3) does Scribd qualify for the safe harbor provisions of the DMCA.

Compl. ¶ 46.  Plaintiff has indicated that she is likely to seek statutory damages on behalf of her proposed class.  Compl. at 19.

## ARGUMENT

## I.     LEGAL STANDARDS

### A.     The Legal Standard Regarding Class Certification

Class certification is the exception, not the rule.  *Norwood v. Raytheon Co.*, 237 F.R.D. 581, 585 (W.D. Tex. 2006) (citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 155 (1982).  As the Fifth Circuit has recognized, class certification has an "*in terrorem power*" that can become abusive.  *See Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,* 487 F.3d 261, 267 (5th Cir. 2007) ("We cannot ignore the *in terrorem* power of certification").  No matter how *de minimus* the sought-after amount of monetary liability per claim may be, the aggregation of thousands of

claims presents the theoretical threat of staggering damages, and a concomitant "insurmountable pressure on defendants to settle . . . even when the probability of an adverse judgment is low." *Fener v. Operating Eng'rs Constr. Indus. & Misc. Pension Fund (Local 66)*, 579 F.3d 401, 406 (5th Cir. 2009). "The Fifth Circuit is [therefore] wary of the power of class actions and requires a plaintiff to prove more at pretrial stages of the litigation[.]" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 795 (S.D. Tex. 2008).

To fulfill her burden to demonstrate the suitability of her claims for class treatment, Plaintiff must establish that her claims "satisfy the four baseline requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation," *Anderson v. U.S. Dep't of Housing & Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008), "as well as the requirements of Rule 23(b)(1), (2), or (3)." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). The Court must conduct a "'rigorous analysis of the Rule 23 prerequisites' before certifying a class,'" including how a trial on the alleged causes of action would proceed. *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (citing *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 740 (5th Cir. 1996)); *Neely v. Ethicon,* No. 00-cv-00569, 2001 WL 1090204, at *11 (E.D. Tex. Aug. 15, 2001) (citing Castano, 84 F.3d at 751).

As Plaintiff's complaint demonstrates that a class action cannot be maintained on the facts alleged, the Court may strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f). *Read v. Input/Output, Inc.*, No. 05-cv-0108, 2005 WL 2086179, at *2 (S.D. Tex. Aug. 26, 2005); Fed. R. Civ. P. 12(f).

**B.      The Legal Standard Regarding the DMCA.**

Title II of the DMCA grants qualifying online services strong protections from claims of copyright infringement that might otherwise be brought against them based on their standard, online operations.  17 U.S.C § 512(a)-(d) (applicable to: (a) transitory communications service providers; (b) "cache" service providers; (c) hosting service providers ; and (d) information location service providers).  As Congress explained: "[i]n the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability. . . .  By limiting the liability of service providers, the DMCA ensures that the efficiency of the Internet will continue to improve and that the variety and quality of services on the Internet will continue to expand."  S. Rep. No. 105-190, at 8 (1998).  Thus, through the DMCA's copyright infringement immunities, Congress intended to foster growth and innovation in online services.

The safe harbor at issue here, section 512(c), applies to online service providers like Scribd that host materials on their systems at the direction of users.  17 U.S.C § 512(c) (entitled and applicable to "Information Residing on Systems or Networks at Direction of Users").  The statute envisions a "notice and take down" regime under which a service to which users have uploaded allegedly infringing material is immunized from infringement claims for hosting the material, provided that the service removes or blocks access to the material upon receiving notice of alleged infringement from the copyright holder.  17 U.S.C. §§ 512(c)(1)(C), 512(c)(2), 512(c)(3).

To qualify for section 512(c) immunity, a service provider (as defined in section 512(k)(1)(b)):

i.        must meet the conditions of eligibility in section 512(i);

ii.      must satisfy the requirements concerning registration of an agent to receive infringement notices under section 512(c)(2); and

iii.     may not have actual knowledge of the infringing activity at issue or of acts from which the infringement is apparent.

17 U.S.C. §§ 512(i), 512(c)(1)(A), 512(c)(2).  The safe harbor is then applicable so long as the online service does not have "the right and ability to control [the infringing] activity."  17 U.S.C § 512(c)(1)(B).  But even where the service has such control, the safe harbor still applies so long as the online service "does not receive a financial benefit directly attributable to the infringing activity."  *Id.*  Thus, to defeat the protection afforded by section 512(c), a party claiming infringement must show that an online service has both the right and ability to control the allegedly infringing activity and a financial benefit that is directly attributable to it.  *Id.*

Like the other DMCA safe harbors, section 512(c) provides expansive protection for qualifying service providers, barring all claims for monetary relief and narrowly circumscribing potential injunctive relief to that described in section 512(j).  *Ellison v. Robertson*, 189 F. Supp. 2d 1051, 1064 (C.D. Cal. 2002), rev'd on other grounds, 357 F.3d 1072 (9th Cir. 2004); see also 17 U.S.C. § 512(j) (describing available injunctive relief).

## C.      The Legal Standard Regarding Copyright Damages.

Under the Copyright Act, a party whose registered work has been infringed may seek its actual damages, along with a non-duplicative disgorgement of the infringer's profits or statutory damages.  See 17 U.S.C. § 504.  The plaintiff may also seek injunctive relief barring further acts of infringement.  See 17 U.S.C. § 502.

### 1.      Actual damages and disgorgement of profits.

Under 17 U.S.C. § 504:

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

### 2.      Statutory damages.

Alternatively, a plaintiff is entitled to statutory damages of $200 for each work infringed where the defendant was not aware of and had no reason to believe that his or her acts constituted an infringement of copyright, $750-$30,000 for each work that was not willfully infringed, and up to $150,000 for each work that the plaintiff can show was willfully infringed. 17 U.S.C. § 504. Statutory damages should bear a reasonable relationship to the actual damages suffered by the plaintiff. *See, e.g., Peer Int'l Corp. v. Luna Records, Inc.*, 887 F. Supp. 560, 568 (S.D.N.Y. 1995) ("Statutory damages should bear some relationship to the actual damages suffered."); *RSO Records, Inc. v. Peri*, 596 F. Supp. 849, 862 (S.D.N.Y. 1994) ("Undoubtedly assessed statutory damages should bear some relation to actual damages suffered.").

## II.    PLAINTIFF'S PURPORTED CLASS CLAIMS DO NOT COMPLY WITH RULE 23(b).

In order for a class action to be certified, it must meet the four requirements of Rule 23(a) and one of the three requirements of Rule 23(b). Because this proceeding has only just begun, and because it is limited to evidence cited in Plaintiff's Complaint, Scribd does not in these papers contest Plaintiff's compliance with Rule 23(a). Scribd reserves its right to do so in the event the Court denies the motion and Plaintiff later moves to certify a class in this action. Even conceding, *arguendo*, that Plaintiff's class claims comply with Rule 23(a), those claims cannot

comply with any of the requirements of Rule 23(b). Plaintiff's class claims should therefore be stricken from its Complaint.

Plaintiff claims that certification of a class in this action is appropriate "under F.R.C.P. 23(b)(1)(A), 23(b)(2), and 23(b)(3)." Plaintiff is wrong.

### 1.    Plaintiff's Claims Do Not Comply with Fed. R. Civ. P. 23(b)(1)(A).

Plaintiff's assertion that certifying a class in this action pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) would be appropriate relies upon a misinterpretation of that Rule. Rule 23(b)(1)(A) states that a class action may be maintained if the prosecution of separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct <u>for the party opposing the class. . .</u>" (emphasis added)

The "risk" referenced by this provision is a risk that if a class is not certified, the defendant could be put in an untenable position where in order to comply with one ruling regarding an individual class member's claims, it would have to take actions that would violate another class member's claims. Put another way, class certification under Rule 23(b)(1)(A) is necessary to avoid a party from being caught up "in the inescapable legal quagmire of not being able to comply with one such judgment without violating the terms of another." *Walker v. City of Houston,* 341 F.Supp. 1124, 1131 (S.D.Tex.1971)("In essence, Rule 23(b)(1) is concerned with the prejudicial effect which inconsistent judgments may have on the party opposing the class."). For example, where a municipality is sued in connection with its issuance of a bond, and there is a risk that some plaintiffs could win an injunction against any issuance of the bond at all while others could win an injunction ordering that the bond be issued and the resultant funds be earmarked for a specific project, class certification under Rule 23(b)(1)(A) would be

appropriate to prevent such contradictory rulings.  There is no such danger here.  In this case, the

individual class members' suits would generally seek rulings requiring Scribd to (1) pay the class

member monetary damages for past infringement; and (2) bar Scribd from future infringement of

the class member's particular works.  These are highly-individualized determinations – there is

nothing Scribd could be ordered to do for one class member that would preclude it from taking

the opposite action with regard to another class member.

Additionally, Rule 23(b)(1)(A) is generally meant to be applied to cases where the class

members are so similarly-situated that the injunctive and money relief provided to each of them

would be identical, or nearly so.

> Rule 23(b)(1) clearly embraces cases in which the party is obliged by law to treat
> the class members alike ... [,] including claims seeking money damages. In such
> cases the class members by definition have highly similar interests and generally
> are seeking damages and the enforcement or prohibition of some course of
> conduct by the opposing party that affects all of them much the same way. As a
> result, basically only one recovery is sought and the determination of the overall
> amount and the sum due each class member is not difficult.

*Id.* (internal quotations omitted) (citing *Turner v. Bernstein*, 768 A.2d 24, 32 (Del.Ch.2000)

(citing 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KANE, FEDERAL

PRACTICE AND PROCEDURE §§ 1772 at 421-26, 1773 at 433-34, and 1789 at 41 (1986 and

2000 Supp.))).  Where class members are not to be treated alike, Rule 23(b)(1) does not support

class certification.  *See, e.g., Whittington v. US*, 240 F.R.D. 344, 354 (S.D. Tex.  2006).

Here, the class members cannot be, and should not be, treated alike.  Plaintiff and the

putative class members are seeking their "actual damages and disgorgement or statutory

damages."  Compl. at p. 19.  As is discussed further below, this calculation of damages would

require separate mini-trials for each class member evaluating the value of each class members'

works, the profits allegedly gained by Scribd in connection with the infringement of each class

members' works, and the proper amount of statutory damages to be awarded to each class member.  A class action requiring this level of individual inquiry is simply inappropriate for certification under Rule 23(b)(1)(A).

In light of the foregoing, it is indisputable that the requirements for class certification pursuant to Rule 23(b)(1)(A) are simply not present in this case, and Rule 23(b)(1)(A) does not form a good-faith basis upon which to certify a class.

**2.     Plaintiff's Claims Do Not Comport with Rule 23(b)(2).**

Plaintiff next claims her class allegations are appropriate under Federal Rule of Civil Procedure 23(b)(2).  Under Rule 23(b)(2), a class may be certified if Scribd "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."   The Fifth Circuit's interpretation of this Rule makes clear that Rule 23(b)(2) is not an appropriate basis for class certification in this matter.

Class certification under Rule 23(b)(2) is only appropriate if requests for monetary relief do not "predominate" over the requests for injunctive relief. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir.1998).  The Fifth Circuit held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief," further explaining that "[b]y incidental, we mean damages that flow directly from liability to the class as a whole on the claims forming the basis of the injunctive or declaratory relief." Id.  "We know, then, that monetary relief 'predominates' under Rule 23(b)(2) . . . when the monetary relief being sought is less of a group remedy and instead depends more on the varying circumstances and merits of each potential class member's case." *Id.* at 413.

Here, the kind of individualized determinations that would be required in order to determine the damages owed to each class member would clearly "predominate," making this action unsuitable for class treatment under Rule 23(b)(2).  If the plaintiffs elect to recover their actual damages, each putative class member would be required to prove – on a work-by-work basis – either actual harm suffered, any profits that Scribd reaped from the alleged infringement, or both.  See 17 U.S.C. § 504(b).  Even if plaintiffs elect statutory damages, the actual damages suffered by each plaintiff with respect to each work would still be relevant to their recovery.  The range of statutory damages permitted by the Copyright Act is quite broad and courts have consistently held that the amount of statutory damages awarded should bear a reasonable relation to the actual damages incurred.  See, e.g., *Bosch v. Ball-Kell*, No. 03-cv-1408, 2007 WL 601721, at *5 (C.D. Ill. Feb. 21, 2007) ("Nor can the Court find that evidence of actual damages is irrelevant even if Plaintiff elects statutory damages"); *New Line Cinema Corp. v. Russ Berrie & Co.*, 161 F. Supp. 2d 293, 303 (S.D.N.Y. 2001) ("New Line's statutory damages should be commensurate with the actual damages incurred"); *Mitchell Int'l, Inc. v. Gonzalez*, No. 04-cv-2299, 2006 WL 2226052, at *9 (D. P.R. Aug. 2, 2006) ("Statutory damages should bear some relationship to the actual damages suffered by the copyright owner.").

Thus, regardless of the plaintiffs' ultimate choice of remedy, there is no "one size fits all" approach that could be applied mechanically to determine damages for each putative class member, and class certification would result in a proliferation of mini-trials concerning damages. Class certification is therefore inappropriate. *See, e.g., Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003) (refusing to certify class action due to the need for individual proof of damages that was "not susceptible to a mathematical or formulaic calculation"); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419 (5th Cir. 1998) (holding that certification was not

appropriate because "plaintiffs' claims for compensatory and punitive damages must therefore focus almost entirely on facts and issues specific to individuals rather than the class as a whole"); *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744 (5th Cir. 2003) ("Even though a class is theoretically certifiable on these issues, we find that an apportioned calculation of damages . . . means that individual issues predominate."); *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006) (refusing to certify class because "[i]t is clear from the record that the damages claims in this case are not subject to any formulaic calculation").

As individualized inquiries to support the plaintiffs' damages claims would clearly predominate, Plaintiff's claims cannot be certified pursuant to Fed. R. Civ. 23(b)(2).

3.    **Plaintiff's Claims Do Not Qualify For Class Certification Under Rule 23(b)(3).**

Plaintiff's final claimed basis upon which its class claims should be certified, Rule 23(b)(3), permits a class action to proceed where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." This provision creates a two-pronged test for class certification: (1) the common claims must predominate over the class members' individual claims; and (2) a class action must be the superior means of most fairly and efficiently adjudicating the case. This case fails both prongs.

a.    **Predominance of individual claims**

For a class action to be certified pursuant to Rule 23(b)(3), it is not enough that common issues of fact exist. Rather, those common issues must "predominate" over individual questions. Rule 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S.

591, 623 (1997). The inquiry is essentially a balancing test that "requires that the court inquire how the case will be tried. This entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class." *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 738 (5th Cir. 2003) (citation omitted).

Where certain common issues exist, but substantial individual questions are also present such that maintenance of the class action would require the court to conduct thousands of mini-trials, neither the predominance nor superiority requirements of Rule 23(b)(3) are met. *See, e.g., Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (class certification inappropriate due to fact that "there is no class-wide proof available to decide consent [to unsolicited facsimile transmissions] and only mini-trials can determine the issue"); *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 307 (5th Cir. 2003) ("where the issue of damages 'does not lend itself to ... mechanical calculation, but requires separate "mini-trial[s]" of an overwhelmingly large number of individual claims,' the need to calculate individual damages will defeat predominance") (citing *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977)). Class certification may only be granted after a determination that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED.R.CIV.P. 23(b)(3). The superiority requirement requires courts to consider "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004).

As reviewed below, the availability of statutory damages to members of Plaintiff's putative class make individual actions the superior form of litigating this dispute and compel striking Plaintiff's class claims. Further, as reviewed above and more extensively below, there

can be no questions that unique individual issues predominate in this matter, making Plaintiff's class claims inappropriate.

**A.      Plaintiff's Case Does Not Meet the Superiority Requirement of Rule 23(b)(3).**

        **1.      A Class Action Is Not the Superior Method for Adjudicating the Class Members' Claims Because the Statutory Damage and Fee-Shifting Provisions of the Copyright Act Provide Incentives for Individual Actions.**

The Fifth Circuit and Supreme Court have explained that class treatment is considered "superior" when there is otherwise no incentive for an individual who has been wronged to sue. *See Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) ("The most compelling rationale for finding superiority in a class action [is] the existence of a negative value suit[.]"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (where the potential recovery for each potential class member is miniscule, class certification may be necessary "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). Where sufficient incentives for individual actions exist, class treatment is not "superior." *See, e.g., Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998) ("'the most compelling rationale for finding superiority in a class action-the existence of a negative value suit' is absent where "[t]he relatively substantial value of these claims . . . and the availability of attorneys' fees eliminate financial barriers that might make individual lawsuits unlikely or infeasible"); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) ("where each plaintiff may receive a large award, and fee shifting often is available . . . we cannot say it would be a waste to allow individual trials to proceed").

Here, class certification clearly would not be "superior." Plaintiff herself has indicated that she will seek statutory damages, and any member of the proposed class could do the same. Under the Copyright Act, a copyright holder may recover statutory damages of up to $150,000

per infringed work. 17 U.S.C. § 504(c). Further, an infringement plaintiff may seek its costs and reasonable attorneys' fees incurred in prosecuting its claims. 17 U.S.C § 505. These statutory damage and fee-shifting provisions create all the incentive necessary for individual actions. *See, e.g., Villagran v. Centr. Ford, Inc.*, 524 F. Supp. 2d 866, 887 (S.D. Tex. 2007) (Rosenthal, J.) ("Because the statute provides for . . . statutory or actual damages and attorneys' fees, there are meaningful incentives to individual suits"); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996) ("The expense of litigation does not necessarily turn this case into a negative value suit, in part because the prevailing party may recover attorneys' fees under many consumer protection statutes"); *Riley v. Compucom Sys., Inc.*, No. 98-cv-1876, 2000 WL 343189, at *5 (N.D. Tex. Mar. 31, 2000) ("by statute each Plaintiff is potentially entitled to recover up to $300,000 plus attorneys' fees, so this is not a 'negative value' suit most efficiently litigated in a class action").

Finally, as the Fifth Circuit held in *Castano v. American Tobacco Co.*, 84 F.d 734 (5th Cir. 1996), where significant incentives for individual litigation exist but few litigants have actually filed suit, the notion that class litigation is necessary to preserve judicial resources is "only theoretical," and will not support class certification. Id. at 747.

### 2. A Class Action Is Not the Superior Method for Adjudicating the Class Members' Claims Because the Aggregation of Thousands of Statutory Damage Awards Would Create an Unjust, Annihilating Award.

As discussed *supra*, the Copyright Act provides that a copyright holder who successfully sues for infringement may recover either her actual damages or statutory damages. 17 U.S.C. § 504(c). In the context of an individual action, the availability of statutory damages provides a reasonable incentive to suit for copyright holders whose rights have been violated in an unquantifiable way. However, in the context of a class action, where the plaintiffs may seek a

separate statutory damages award for each of thousands of works alleged to have been infringed, even the statutory minimum of $750 becomes absurd. *See Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 236 (9th Cir. 1974) (Duniway, J., concurring) ("I cannot believe that Rule 23, as amended, was intended or should be construed to authorize the kind of judicial juggernaut that plaintiffs and their counsel seek to create here."); *Seig v. Yard House Rancho Cucamonga, LLC,* No. 07-cv-2105, 2007 WL 6894503, at *5 (C.D. Cal. Dec. 10, 2007) (class certification should be denied "where the damages would be 'ad absurdum'").

In these circumstances, class certification would not serve the interests of justice, but rather would act as a weapon, allowing the inconsequential infringement of one out-of-print book to be extrapolated into a crushing and arbitrary award that could bankrupt Scribd. Courts have consistently held that the potential for this type of result undermines the superiority of class treatment, and warrants a denial of class certification. For instance, in the landmark case of *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972), Judge Frankel – an architect of Rule 23 – refused to certify a class seeking minimum statutory damages under the Truth-in-Lending-Act ("TILA"). As Judge Frankel explained, "the allowance of thousands of minimum recoveries like plaintiff's would carry to an absurd and stultifying extreme the specific and essentially inconsistent remedy Congress prescribed as a means of enforcement." *Id.* at 414. Class certification would result in a "horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to the defendant." *Id.* at 416.

Judge Frankel's reasoning has been adopted by courts around the country, which have denied class certification in cases involving a host of other statutes providing for statutory damage awards. *See, e.g., Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234 (9th Cir. 1974) (declining to certify class where plaintiff sought treble damages under Sherman and Clayton acts

that amounted to "horrendous, possibly annihilating punishment unrelated to any damage to the purported class"); *In re Trans Union Corp Privacy Litig.*, 211 F.R.D. 328, 351 (N.D. Ill. 2002) (refusing to certify class for claims under Fair Credit Reporting Act where there was "the potential for catastrophic damages"); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003) (noting that "we . . . doubt as to whether the class certification could meet Rule 23(b)(3)'s superiority requirement" given that "defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff."); *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 507 (N.D. Ga. 2006) (denying certification of class action for claims under Credit Repair Organizations Act due to "the likelihood that class damages would be disproportionately large")[2].

The analysis of *Ratner* and its progeny applies here. Those cases correctly recognize that Congress, in enacting statutes with minimum statutory damage provisions, did not intend to bankrupt corporations for violating their provisions. Where, as here, Plaintiff alleges the existence of thousands of putative class members, the recoverable damages would be completely disproportionate to the harm suffered and contrary to Congress's intent. Plaintiff's class allegations should therefore be stricken.

3.      **A Class Action Is Not the Superior Method for Adjudicating the Class Members' Claims Because the Aggregation of Thousands of Statutory Damage Awards Would Violate Scribd's Due Process Rights**

---

[2] *See also Soualian v. Int'l Coffee & Tea LLC*, No. 07-cv-502, 2007 WL 4877902, at *3 (C.D. Cal. June 11, 2007); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 405 (E.D. Pa. 1995); *Wilson v. Am. Cablevision of Kansas City, Inc.*, 133 F.R.D. 573, 579 (W.D. Mo. 1990); *Alsup v. Montgomery Ward & Co.*, 57 F.R.D. 89 (N.D. Cal. 1972); *Shields v. First Nat'l Bank of Ariz.*, 56 F.R.D. 442 (D. Ariz. 1972); *Mathews v. Book-of-the-Month Club, Inc.*, 62 F.R.D. 479 (N.D. Cal. 1974); *Kriger v. European Health Spa, Inc., of. Milwaukee, Wis.*, 56 F.R.D. 104, 106 (E.D. Wis. 1972); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336, 347 (10th Cir. 1973); *Shroder v. Suburban Coastal Corp.* 729 F.2d 1371 (11th Cir. 1984); *Fisher v. First Nat'l Bank of Omaha*, 548 F.2d 255, 262 (8th Cir. 1977)

In addition to being unjust, a massive award of statutory damages would also violate Scribd's due process rights. The Supreme Court has held that the Due Process Clause "prohibits the imposition of grossly excessive or arbitrary punishments," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003), and has indicated that even a 4:1 ratio between punitive and compensatory damages would be "close to the line" of constitutional acceptability. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 581-83 (1996) (quoting Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24 (1991)). Consequently, the Supreme Court has struck down a $145 million punitive damages award where only $1 million was awarded in compensatory damages, calling it "an irrational and arbitrary deprivation of the property of the defendant." State Farm, 538 U.S. at 429.

Statutory damages, to the extent they exceed actual harm, are functionally identical to punitive damages. *See, e.g., Kobs v. Arrow Serv. Bureau, Inc.*, 134 F.3d 893, 898 (7th Cir. 1998) ("statutory damages under [TILA] 'is nothing more than a prayer for statutorily-authorized punitive damages'") (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 225 (4th Cir. 1978); Johnson v. Eaton, 80 F.3d 148, 151-52 (5th Cir. 1996) (characterizing statutory damages as "additional, punitive damages"). Therefore, courts have noted that aggregated statutory damage awards that are grossly disproportionate to the actual harm suffered are likely to run afoul of the due process protections identified by the Supreme Court in BMW and Gore. For instance, the court in *UMG Recordings, Inc. v. Lindor*, No. CV-05-1095, 2006 WL 3335048 (E.D.N.Y. Nov. 9, 2006) granted the defendant's motion to amend her answer to assert the affirmative defense that the aggregation of statutory copyright damages violated due process. In doing so, the court noted:

> [P]laintiffs can cite to no case foreclosing the applicability of the due process clause to the aggregation of minimum statutory damages proscribed under the

Copyright Act. On the other hand, [case law and law review articles] suggest[] that, in a proper case, a court may extend its current due process jurisprudence prohibiting grossly excessive punitive jury awards to prohibit the award of statutory damages mandated under the Copyright Act if they are grossly in excess of the actual damages suffered.

*Id.* at *3. *See also Atl. Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 282 (D. Conn. 2008) (holding that defendant had potentially meritorious defense that "the amount of statutory damages available under the Copyright Act, measured against the actual money damages suffered, is unconstitutionally excessive"); *UMG Recordings, Inc. v. MySpace, Inc.*, No. CV 06-7361 AHM (AJWx), slip op. (C.D. Cal. Mar. 17, 2008) (an enormous disparity between a statutory award and a copyright owner's actual damages could violate due process).

Here, the award implicitly demanded by Plaintiffs would shatter the *Gore* and *State Farm* due process limits and would result in a recovery "grossly disproportionate" to any possible measure of actual damages they might attempt to establish. While such an award is arguably permissible in the context of an individual action, it takes on an unconstitutional cast if aggregated through the power of the class-action mechanism. *See, e.g., Blanco v. CEC Entm't Concepts L.P.*, No. 07-0559, 2008 WL 239658, at *2 (C.D. Cal. Jan. 10, 2008) (denying motion to certify class under Fair and Accurate Credit Transactions Act of 2003 because potential damages would be "grossly disproportionate to the alleged injury" in violation *State Farm*); *In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 351 (N.D. Ill. 2002) (declining to certify class under Fair Credit Reporting Act; "consideration of the financial impact [of aggregated statutory awards] is proper when based on the disproportionality of a damage award that has little relation to the harm actually suffered by the class, and on the due process concerns attended upon such an impact").

Although, to Scribd's knowledge, the Fifth Circuit has not specifically addressed the propriety of class certification in these circumstances, the Second Circuit's decision in *Parker v. Time Warner Entertainment Co.*, L.P. 331 F.3d 13 (2d Cir. 2003), strongly counsels against certification where, as here, the resulting statutory damages award would violate the defendant's due process rights. In *Parker*, the district court refused to certify an action involving claims under the Cable Communications Policy Act on the ground that the aggregate statutory damage award that could result would be unconstitutional. *Parker v. Time Warner Entertainment Co. L.P.*, 198 F.R.D. 374, 183 (S.D.N.Y. 2002). The Court of Appeals vacated the denial on other, procedural grounds, but in doing so made clear that the district court's due process concerns were justified. The court held that:

> [T]he potential for a devastatingly large damages award, out of all reasonable proportion to the actual harm suffered by members of the plaintiff class, may raise due process issues. Those issues arise from the effects of combining a statutory scheme that imposes minimum statutory damages awards on a per-consumer basis – usually in order to encourage the filing of individual lawsuits as a means of private enforcement of consumer protection laws – with the class action mechanism that aggregates many claims – often because there would otherwise be no incentive to bring an individual claim. Such a combination may expand the potential statutory damages so far beyond the actual damages suffered that the statutory damages come to resemble punitive damages – yet ones that are awarded as a matter of strict liability, rather than the egregious conduct typically necessary to support a punitive damages award. It may be that the aggregation in a class action of the large numbers of statutory damages claims potentially distorts the purpose of both statutory damages and class actions.

331 F.3d 24-25.

Scribd respectfully submits that the Second Circuit's thoughtful analysis applies with equal force here. Maintenance of this action as a class action could lead to a catastrophic, unconstitutional award. Class certification therefore is not the superior method for adjudicating the putative class members' claims.

**B.    Plaintiff's Case Does Not Meet the Predominance Requirement of Rule 23(b)(3).**

Here, although there is a loose tie that connects the members of Plaintiff's proposed class, the claims of those members demand individual proof in a myriad of ways. The questions unique to each of those class members far outweigh any common questions, and would render actual litigation of this dispute through the class action device unmanageable. As discussed extensively above, mini-trials would be necessary with regard to damages issues, including the actual damages suffered by each plaintiff. That issue alone means that Plaintiff cannot meet Rule 23(b)(3)'s predominance requirement. However, mini-trials that would preclude this case from qualifying for class certification under Rule 23(b)(3) also would be required on other issues fundamental to this action beyond damages.

### 1.   Certification Would Result in a Multitude of Mini-Trials Regarding Copyright Ownership

A fundamental prerequisite for maintaining an action for copyright is ownership of a properly registered copyright. 17 U.S.C. §§ 411(a), 501(b). Where the plaintiff seeks statutory damages, she must also prove that the copyright at issue was registered either prior to the alleged infringement or within three months of first publication of the work. 17 U.S.C. § 412(2). Thus, were this action to be certified and the plaintiffs to seek statutory damages, the plaintiffs would be required to establish for each of the thousands of works allegedly at issue: (1) that they owned the copyright; (2) that the copyright was registered; and (3) that the alleged infringement occurred after registration or within three months of first publication. Where a plaintiff is not the author of the work he claims to own, "she must establish a proprietary right to the work through the chain of title in order to support a valid claim to the copyright." *Motta v. Samuel Weiser, Inc.*, 768 F.2d 481, 484 (1st Cir. 1985); see also *Am. Plastic Equipment, Inc. v. Toytrackerz,*

LLC, No. 07-2253, 2009 WL 902422, at *5 (D. Kan. Mar. 31, 2009); *Sabroso Publ'g, Inc. v. Caiman Records Am., Inc.*, 141 F. Supp. 2d 224, 226 (D. P.R. 2001); *Bell v. Combined Registry Co.*, 397 F. Supp. 1241, 1245 (N.D. Ill. 1975). "Absent this showing, a plaintiff does not have standing to bring an action under the Copyright Act." *Motta,* 768 F.2d at 484.

Establishing these factual predicates for all of the works allegedly at issue presents an enormous burden that renders disposition of plaintiffs' claims on a class basis untenable. Unlike for instance, ownership of real property, there is no central repository for ownership information and therefore there is no simple way of establishing ownership. Although the Copyright Office maintains a central registry, the registry is only evidence of the original registrant of the work in question. It does not establish who currently owns the copyrights to registered works, whether the work has been sold or transferred (as undoubtedly many of the works in question were), whether there is a co-owner to the work, and when the alleged infringement occurred. Rather, for each work the Court would be required to preside over a mini-trial concerning whether the work was registered, when the alleged infringement of that work occurred, and whether the plaintiff can demonstrate a chain of title evidencing his current ownership of the work. *See WB Music Corp. v. Rykodisc, Inc.*, No. 94-cv-2902, 1995 WL 631690, at *6 (E.D. Pa. Oct. 26, 1995) (denying motion to certify class action for copyright infringement; "if each individual copyright owner brought a separate copyright infringement claim, there is no common element which each owner would need to prove in each separate action. The validity of the copyright . . . [is] particular to that one case and no other.").

**2.    Certification Would Result in a Multitude of Mini-Trials Regarding Infringement**

The crux of Plaintiff's allegations – the alleged infringement itself – also would occasion numerous mini-trials that would defeat the purpose of the class action device. Plaintiffs will doubtlessly argue that it is simple for Scribd to ascertain which documents have been uploaded to the Website. However, Scribd has no means of knowing which of those documents have been registered for copyright protection or uploaded by persons other than the copyright owner. As other courts have recognized, whether copyright infringement occurred is simply not susceptible to simple, class-wide proof. For instance, the court in *Estate of Berlin v. Stash Records, Inc.*, No. 95-cv-6575, 1996 WL 374176 (S.D.N.Y. July 2, 1996) rejected the plaintiff's contention that class certification was appropriate because the defendant had "pursued a general scheme of copyright infringement with respect to all putative class members by releasing phonorecords without properly obtaining licenses." Id. at *1. The court held that the action could not be litigated on a class basis because:

> [E]ach putative class member must prove different facts surrounding infringement of its own copyright. In other words, even if named plaintiff could prove that defendants have pursued a general scheme of copyright infringement by releasing phonorecords without properly obtaining licenses, this proof of defendants' conduct does not assist any putative class member, including named plaintiff, in prosecuting its claim. Each class member would have to provide independent proof, relevant only to its claim, of what activities defendants engaged in which violated its particular copyright.

*Id.* at *2; see also *WB Music Corp. v. Rykodisc, Inc.*, No. 94-cv-2902, 1995 WL 631690, at *6 (E.D. Pa. Oct. 26, 1995) ("if each individual copyright owner brought a separate copyright infringement claim, there is no common element which each owner would need to prove in each separate action. . . . [T]he specific act of infringement [is] particular to that one case and no other.").

Furthermore, even if Scribd could easily determine which documents were uploaded by persons other than their authors, it still would have no way of knowing which of those uploads

were made without the author's consent.  This too would need to be resolved on a work-by-work basis, as "[p]ublication . . . [p]ursuant to a valid grant of permission to do so is simply not copyright infringement." *Auscape Int'l v. Nat'l Geographic Enters. Inc.*, 2003 WL 23531750, at *12 (S.D.N.Y. July 25, 2003).  The individualized proof needed to determine whether the owner of each work at issue had consented to distribution via the Scribd Website would deprive the class action device of any utility.  *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008) (denying motion to certify class action concerning unsolicited fax advertisements because "we do not perceive [any] sensible method of establishing consent or the lack thereof via class-wide proof."); *Auscape*, No. 02-cv-6441, 2003 WL 23531750, at *12 (denying motion to certify class because individual questions concerning consent to publication "require a plaintiff-by-plaintiff determination"); *WB Music Corp.*, 1995 WL 631690, at *6 (E.D. Pa. Oct. 26, 1995) ("the absence of any valid license" is an individualized fact that undermines predominance).

Finally, even if Scribd could ascertain which documents have been uploaded to its Website without the owner's express or implied permission, to the extent Plaintiffs' claims are based upon Scribd's allegedly permitting the download of uploaded documents, Plaintiffs would still need to establish on a work-by-work basis that each work has been downloaded, rather than merely made available.  *See Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1221 (D. Minn. 2008) (rejecting argument that "simply making a copyrighted work available to the public constituted a distribution, even if no member of the public ever accessed that work"); *Atl. Recording Corp. v. Brennan*, 534 F. Supp. 2d 278, 282 (D. Conn. 2d 278, 282) ("'[W]ithout actual distribution of copies . . . there is no violation [of] the distribution right.'") (citing 4 William F. Patry, Patry on Copyright § 13:9 (2007)).

### 3.   Certification Would Result in a Multitude of Mini-Trials Regarding Scribd's Knowledge of Alleged Infringement

Individualized questions sufficient to preclude class certification also exist with respect to Scribd's knowledge of the alleged infringement of each class member's works.  Pursuant to the DMCA, Scribd is immunized from liability for copyright infringement due to content uploaded to its Website by third parties if it does not have actual knowledge of the infringement of a particular work and "is not aware of facts or circumstances from which infringing activity is apparent[.]"   17 U.S.C.  §  512(c).   Furthermore, a prima facie element of contributory infringement is that the defendant "knowingly contribute[] to the infringing conduct of another[.]"  *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).  Finally, a determination of the proper range of statutory damages to be applied will depend on proof of the willfulness of Scribd's infringement.  *See* 17 U.S.C. § 504.

These standards require factual findings as to the relationship between Scribd, the claimed direct infringers, and/or the allegedly infringed content.  For each copyright at issue, the timing of the alleged direct infringement, any knowledge on the part of Scribd regarding that infringement, and any efforts made by Scribd to prevent the infringement will be essential at trial.  In short, granting class certification would require a mini-trial as to each work at issue regarding whether Scribd was aware that the work was copyrighted, was aware that the work had been uploaded to its Website, and was aware that the upload was done without authorization by the copyright holder.  Under these circumstances, class certification would be improvident.

## CONCLUSION

For the foregoing reasons, Scribd asks that this Court strike Plaintiff's class allegations.

Respectfully submitted,

By: _____

Barry G. Flynn
State Bar No. 07196560
Federal Bar No. 3618
3D/International Tower
1900 West Loop South, Suite 1000
Houston, TX  77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)

**ATTORNEY IN CHARGE FOR
SCRIBD, INC.**

OF COUNSEL:

GORDON & REES, L.L.P.
3D/International Tower
1900 West Loop South, Suite 1000
Houston, TX  77027
(713) 961-3366 (Telephone)
(713) 961-3938 (Facsimile)

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion To Strike Class Allegations or, in the alternative, To Deny Class Certification; Memorandum of Points and Authorities has been forwarded to Plaintiff by serving it's counsel of record, as set forth below, in accordance with Fed. R. Civ. P. 5, by electronic mail and/or First Class U.S. Mail, postage prepaid, the original hereof has been duly filed electronically with the United States District Court For the Southern District of Texas, Houston Division Clerk's Office on the 6th day of November, 2009.

Barry G. Flynn