UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ELAINE SCOTT,

     *Plaintiff*,

v.

SCRIBD INC.,

     *Defendant*.

Case No. 4:09-cv-3039-MH
Jury Demanded

ORAL ARGUMENT REQUESTED

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO STRIKE CLASS ALLEGATIONS OR, IN THE ALTERNATIVE, TO
DENY CLASS CERTIFICATION**

Dockets.Justia.com

# TABLE OF CONTENTS

I.   This Case Turns on Whether Scribd Falls Within the DMCA Safe Harbor for Internet Service Providers.......................................................................... 1

II.  Scribd's Objections to Certification Are Premature. ................................. 8

   A.  Rule 12(f) cannot be used to strike class-action allegations on the ground that the case does not satisfy Rule 23. ......................................... 8

   B.  Discovery is necessary to decide on Scribd's objections to certification. ......................................................................................... 12

III. Scribd's Objections to Certification Lack Merit. ..................................... 14

   A.  The standard of review is the same as under Rule 12(b)(6). .................. 15

   B.  Rule 23(b)(1) applies because different injunctions in separate cases could subject Scribd to incompatible standards of conduct................. 16

   C.  Hybrid certification under Rule 23(b)(2) is appropriate because minimum statutory damages flow automatically from the common questions of law that determine liability............................................. 18

   D.  Scribd's objections to certification under Rule 23(b)(3) are unpersuasive.................................................................................... 21

      1.  A class action would be superior to individual actions. ...................... 21

         a.  The existence of statutory damages and fee-shifting provision in the Copyright Act does not bar a class action. ......................................... 21

         b.  The possibility of an "annihilating" award as a result of aggregating claims for statutory damages is not a reason to deny certification. ...23

         c.  Scribd's constitutional challenge to the statutory-damages provision of the Copyright Act is not ripe. .......................................................27

      2.  Class-wide questions predominate. ...................................................... 30

         a.  Mini-trials on copyright ownership are not necessary. ...................... 30

         b.  Mini-trials on infringement are not necessary. ................................. 33

         c.  Mini-trials on willfulness are not necessary. .................................... 34

IV.  CONCLUSION ....................................................................................... 34

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) _____ 7

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998) _____ 19, 20

*Arista Records LLC v. Usenet.Com, Inc.*, No. 07-cv-8822, 2008 WL 4974823 (S.D.N.Y.) _____ 7

*Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439 (N.D. Cal. 1994) _____ 20, 21

*Ashby v. Farmer's Insurance Co. of Oregon*, No. CV-01-1446-BR, 2004 WL 2359968 (D. Ore.) _____ 26

*Barasich v. Shell Pipeline Company, LP*, Civil Action No. 05–4180, 2008 WL 64688611 (E.D. La.) ___ 15

*Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702 (6th Cir. 2009) _____ 21

*Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294 (5th Cir. 2003) _____ 19

*Burke v. Mesta Machine Co.*, 5 F.R.D. 134 (W.D. Pa. 1946) _____ 10

*Califano v. Yamasaki*, 442 U.S. 682 (1979)_____ 26

*Capitol Records, Inc. v. Alaujan*, 626 F. Supp. 2d 152 (D. Mass. 2009) _____ 29

*Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996)_____ 22

*Chakejian v. Equifax Information Services*, 256 F.R.D. 492 (E.D. Pa. 2009) _____ 22

*Chiang v. Veneman*, 385 F.3d 256 (3d Cir. 2004)_____ 32

*Cole v. Asurion Corp.*, 2008 WL 5423859 (C.D. Cal.)_____ 11

*David v. Showtime/The Movie Channel, Inc.*, 697 F. Supp. 752 (S.D.N.Y. 1988)_____ 31

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) _____ 32

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)_____ 7

*Fears v. Wilhelmina Model Agency, Inc.*, 2003 WL 21659373 (S.D.N.Y. 2003) _____ 32

*Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008) _____ 15

*Gloria v. Allstate County Mutual Insurance Co.*, 2000 WL 34754563 (W.D. Tex. 2000)_____ 9

*Hardeman v. City of Albuquerque*, 377 F.3d 1106 (10th Cir. 2004) _____ 30

*Harris v. City of Virginia Beach*, 923 F. Supp. 869 (E.D. Va. 1996)_____ 30

*Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354 (M.D. Fla. 2008) _____ 10

*Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161 (7th Cir. 1974)_____ 21, 24

*Hendrickson v. Amazon.Com, Inc.*, 298 F. Supp. 2d 914 (C.D. Cal. 2003) _____ 8

*Hibbs-Rines v. Seagate Technologies, LLC*, 2009 WL 513496 (N.D. Cal. 2009) _____ 9

*Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491 (N.D. Ga. 2006) _____ 25

*Holmes v. Continental Can Co.*, 706 F.2d 1144 (11th Cir. 1983) _____ 20

*In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634 (N.D. Ill. 2002)_____ 8

*In re Enron Corp. Securities*, 529 F. Supp. 2d 644 (S.D. Tex. 2006)_____ 12, 16

*In re Initial Public Offering Securities Litigation*, 471 F.3d 24 (2d Cir. 2006) _____ 32

*In re Napster, Inc. Copyright Litigation*, No. MDL-00-1369-MHP, 2005 WL 1287611 (N.D. Cal.)___ 7, 22, 26, 27

*In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328 (N.D. Ill. 2002) _____ 24

*Kline v. Coldwell, Banker & Co.*, 508 F.2d 226 (9th Cir. 1974) _____ 23

*Kyriazi v. Western Elec. Co.*, 647 F.2d 388 (3d Cir. 1981) _____ 20

*London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246 (11th Cir. 2003) _____ 25

*Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439 (1988) _____ 29

*Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503 (N.D. Ill. 2001) _____ 22

*Nguyen v. St. Paul Travelers Insurance Co.*, Civil Action No. 06-4130, 2009 WL 23677 (E.D. La.) ____ 10

*O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732 (5th Cir. 2003) _____ 19

*Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261 (5th Cir. 2007) _____ 12

*Parker v. Time Warner Entertainment Co., L.P.*, 198 F.R.D. 374 (E.D.N.Y. 2001) _____ 20, 28, 29

*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146 (C.D. Cal. 2002) _____ 8

*Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357 (5th Cir. 2004) _____ 4

*Ratner v. Chemical Bank of New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972)_____ 24, 29

*Read v. Input/Output, Inc.*, No. H-05-0108, 2005 WL 206179 (S.D. Tex.) _____ 9

*Reeb v. Ohio Dep't of Rehabilitation and Correction*, 435 F.3d 639 (6th Cir. 2006) _____ 20

*Reiter v. Sonotone Corp*, 442 U.S. 330 (1979) _____ 26

*Riley v. Compucom Systems, Inc.*, No. 398-cv-1876-L, 2000 WL 343189 (N.D. Tex.)_____ 22

*Rivera v. Wyeth–Ayerst Laboratories*, 283 F.3d 315 (5th Cir. 2002) _____ 12

*Roper v. Consurve, Inc.*, 578 F.2d 1106 (5th Cir. 1978) _____ 26

*Ryan v. Carl Corp.*, 1999 WL 16320 (N.D. Cal.) _____ 31

*Seig v. Yard House Rancho Cucamonga, LLC*, 2007 WL 6894503 (C.D. Cal. 2007) _____ 24

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) _____ 21

*Smith v. Crystian*, 91 Fed. Appx. 952 (5th Cir. 2004) _____ 17

*Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338 (S.D. Miss. 2003) _____ 17

*Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598 (5th Cir. 2006)_____ 19

*Stoffels v. SBC Communications, Inc.*, 238 F.R.D. 446 (W.D. Tex. 2006) _____ 32

*Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998) _____ 20, 28

*Tur v. YouTube, Inc.*, No. CV-06-4436-FMC, 2007 WL 4947615 (C.D. Cal.) _____7

*UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F. Supp. 2d 1081 (C.D. Cal. 2008)_____7

*Unger v. Amedisys Inc.*, 401 F.3d 316 (5th Cir. 2005) _____ 11, 12

*Villagran v. Central Ford, Inc.*, 524 F. Supp. 2d 866 (S.D. Tex. 2007)_____ 22

*Vizena v. Union Pacific R.R. Co.*, 360 F.3d 496 (5th Cir. 2004) _____ 11

*WB Music Corp. v. Rykodisc, Inc.*, 1995 WL 631690 (E.D. Pa. 1995)_____ 30

## Statutes

17 U.S.C. § 504(c)(1) _____ 19

17 U.S.C. § 512(c) _____ passim

Plaintiff respectfully requests oral argument on Defendant's Motion to Strike Class Allegations or, in the Alternative, to Deny Class Certification. *See* Local Rule 7.5(a). Because these proceedings are at such an early stage (before any discovery at all has been conducted and even before the scheduling conference), Plaintiff believes that the availability of counsel at oral argument to describe the relevant facts that they intend to prove and to answer any questions about these facts may be useful to this Court.

## I.   This Case Turns on Whether Scribd Falls Within the DMCA Safe Harbor for Internet Service Providers.

Plaintiff Elaine Scott is an author of children's books. Her books include *Mars and the Search for Life* (2008), *All About Sleep From A to Zzzz* (2008), *Secrets of the Cirque Medrano* (2008), *When is a Planet Not a Planet?: The Story of Pluto* (2007), *Poles Apart: Why Penguins and Polar Bears Will Never Be Neighbors* (2004), *Friends!* (2000), *Close Encounters: Exploring the Universe with the Hubble Telescope* (1998), *Twins!* (1998), *Adventures in Space* (1995), *Movie Magic: Behind the Scenes with Special Effects* (1995), *Funny Papers: Behind the Scenes of the Comics* (1993), *Look Alive: Behind the Scenes of an Animated Film* (1992), *Safe in the Spotlight: The Dawn Animal Agency and the Sanctuary for Animals* (1991), *Choices* (1989), *Kidnapped!: Could it Happen to You?* (1989), *Ramona: Behind the Scenes of a Television Show* (1988), *Stocks and Bonds, Profits and Losses* (1985), *Oil: Getting It, Shipping It, Selling It* (1984), and *Doodlebugging — The Treasure Hunt for Oil* (1982). *See generally* www.elainescott.com.

1

This case concerns one such book: *Stocks and Bonds, Profits and Losses* (1985).  In July 2009, Mrs. Scott discovered that *Stocks and Bonds* was available for free through www.scribd.com.  Complaint at ¶ 9.  Neither Mrs. Scott nor her publisher nor anyone else with authority ever gave Scribd permission to publish her book on its website.  *Id.*  According to the statistics shown on www.scribd.com, Scribd's users downloaded *Stocks and Bonds* more than 100 times while it was available from Scribd.  *Id.*  Scribd's copy of *Stocks and Bonds* included the ordinary copyright-notice page that appears in published books.  It was obvious from this page that *Stocks and Bonds* was copyrighted and that no one other than Mrs. Scott or (perhaps) her publisher could have granted Scribd a license to publish it.  Notwithstanding this copyright notice, it was only after Mrs. Scott discovered Scribd's unauthorized publication and sent a letter to Scribd demanding that Scribd remove her book, *id.* at ¶ 10, that Scribd took the book down.

Copyright infringement is endemic to Scribd.  Scribd owns and operates a website, www.scribd.com, that allows users to (1) upload copyrighted works and (2) view copyrighted works uploaded by others.  Complaint at ¶¶ 15–17.  Scribd's euphemism for this is "social publishing."  *Id.* at ¶ 17.  The copyrighted works involved include any kind of textual material, ranging from term papers to technical whitepapers, to legal briefs, to magazine articles, to books.  *Id.* at ¶¶ 16–17.  When a user uploads a copyrighted work, Scribd

2

makes no effort to determine whether the user has authority to permit Scribd to publish the work other than by asking the user.  As a result, Scribd's website is full of works uploaded by users illegally — including, for example, pirated copies of Harry Potter novels and *Da Vinci Code*-author Dan Brown's latest book, *The Lost Symbol*.  *Id.* at ¶¶ 20–22, 32.

Once a user uploads a work, Scribd does several things.  First, Scribd transforms the work from the format in which it was uploaded (for example, Microsoft Word or Adobe PDF) into a proprietary format called iPaper.  Complaint at ¶¶ 16–17, 34.  In doing so, Scribd creates a derivative work.  Second, Scribd makes the work, in iPaper format, available for display and download on its website and indexes the work in its search engine so that users can locate it to view and download.  *Id* at ¶¶ 15, 17.  Third, Scribd adds advertising to the display page of the work, *id.* at ¶¶ 26–31, based, in part, on the text that appears in the work.  This advertising appears both beside the work, like advertising in Google search results, and interspersed inside the work, like commercials in a movie.  Scribd makes money from its website by selling this advertising.  *Id.*  This is Scribd's principal source of revenue.

Scribd admits that it engages in copyright infringement.  "To establish a claim for copyright infringement, a plaintiff must prove that: (1) he owns a valid copyright and (2) the defendant copied constituent elements of the plaintiff's work that are original."  *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394

3

F.3d 357, 367 (5th Cir. 2004).  Each publication of a copyrighted work without a license from the copyright owner is a separate act of infringement.  Scribd contends that it should, nonetheless, be immune from liability for copyright infringement because it (1) has implemented a copyright filter that recognizes copyrighted works taken down in this manner and prevents them from being uploaded again and (2) falls within the safe harbor in the Digital Millenium Copyright Act for Internet service providers because it promptly removes copyrighted works when the copyright owner complains.  *See* M. at 4; Complaint at ¶¶ 21–23.[1]

The first of these defenses is not a defense.  Scribd's copyright filter did not stop Scribd from publishing *Stocks and Bonds*.  Complaint at ¶ 9.  Nor did that filter stop Scribd's users from downloading *Stocks and Bonds* more than 100 times.  *Id.*  An ineffective filter is no defense.  Moreover, the filter is itself

---

[1] The complaint includes quotes from CEO Trip Adler in various media interviews admitting to frequent infringement, but defending this infringement on the ground that Scribd takes down copyrighted works after receiving a complaint from the copyright owner:

- "[When] [s]omething copyrighted gets uploaded, which does often happen, we just remove it when the copyright holder complains."  Complaint at ¶ 21.
- "We can't control it [copyright infringement] . . . . We'd like them to let us know to take it down."  Complaint at ¶ 22.
- "We've actually gone above and beyond the DMCA by implementing a copyright filter so that anytime something that's uploaded that's already been taken down before is automatically recognized we just remove it immediately.  This keeps a lot of copyrighted books and other documents that were being uploaded frequently off the site completely."  Complaint at ¶ 23.

objectionable.  According to Scribd, whenever a copyright holder asks Scribd to remove a copyrighted work, Scribd adds that copyright holder's work to the filter, again without the copyright holder's permission.  Complaint at ¶¶ 23–25. This is still another unlicensed copying of the copyrighted work that constitutes copyright infringement — and another example of how Scribd is building valuable products, here, the copyright filter, by exploiting unlicensed copyrighted works.

Even for a copyright owner who does want to use Scribd's copyright filter to help protect her work, use of the filter is not free.  The user must sign an odious agreement in which she agrees that Scribd's business is lawful, releases Scribd from all past liability (whether or not related to the filter) and all future liability arising out of failure of the filter, agrees to take on the burden of policing Scribd and reporting the appearance of any other of her copyrighted works, and agrees that Scribd can change the terms of this agreement at any time.  Complaint at ¶ 37–38 (quoting agreement).  Scribd cannot place copyright owners in a catch 22 by requiring them to agree to the legality of Scribd's business in order to gain whatever benefits the filter may provide or else undertaking to hunt down infringement on Scribd's website themselves, with the result that Scribd will add any works they catch to Scribd's filter whether the copyright owners like it or not.

Scribd's real legal defense is 17 U.S.C. § 512(c), the DMCA safe harbor intended for Internet service providers.  Section 512(c)(1) provides:

> A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider —

> (A)　(i)　does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

> (ii)　in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or

> (iii)　upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material; and

> (B)　does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and

> (C)　upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove or disable access to, the material that is claimed to be infringing or to be the subject of infringing activity.

17 U.S.C. § 512(c)(1).  To invoke this affirmative defense, Scribd must prove each of (A) (lack of notice), (B) (no financial benefit), and (C) (prompt remedial action upon notice from the copyright holder).[2]

---

[2] Scribd suggests that Mrs. Scott bears the burden of proof to negate each of the § 512(c) elements.  *See* M. at 9 ("a party claiming infringement must show . . . ."). This is incorrect.  Section 512(c) is an affirmative defense that Scribd must plead and prove.  *See, e.g., UMG Recordings, Inc. v. Veoh Networks, Inc.*, 620 F.

Scribd cannot prove (A) or (B).  Scribd cannot prove (A) because it is "aware of facts or circumstances from which infringing activity is apparent."  It has admitted in press statements cited in the complaint that copyright infringement on its website is rampant.  Complaint at ¶¶ 21–22 ("[When] [s]omething copyrighted gets uploaded, which does often happen . . . ."; "We can't control it [copyright infringement]").  Moreover, many copyrighted works, including *Stocks and Bonds*, include a prominent copyright notice that was sufficient to put Scribd on notice that uploads of those works were almost certainly infringing.

Scribd cannot prove (B) because it receives "a financial benefit directly attributable to the infringing activity" in that it receives — and has built its entire business around — advertising revenue from advertisements on the individual web pages that display copyrighted works.  Complaint at ¶¶ 26–32.  Without these works, users would not visit Scribd, and Scribd would be unable to sell its advertising.  *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004) ("financial benefit directly attributable" if infringing activity attracts users); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001) (same); *Hendrickson v. Amazon.Com, Inc.*, 298 F. Supp. 2d 914, 918 (C.D. Cal.

---

Supp. 2d 1081, 1082 (C.D. Cal. 2008) (describing safe harbor as "affirmative defense"); *Arista Records LLC v. Usenet.Com, Inc.*, No. 07-cv-8822, 2008 WL 4974823 at *4 (S.D.N.Y.) (same); *Tur v. YouTube, Inc.*, No. CV-06-4436-FMC, 2007 WL 4947615 at *1 (C.D. Cal.) (same); Scribd's Original Answer (Docket No. 6) at ¶ 57 (pleading safe harbor as affirmative defense).

2003) (financial benefit from third-party sellers on Amazon was sufficiently direct); *In re Aimster Copyright Litigation*, 252 F. Supp. 2d 634, 655, 661 (N.D. Ill. 2002) (sale of promotional T-shirts and solicitation of donations was sufficiently direct); *Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1181 (C.D. Cal. 2002) (financial benefit from third-party adult verification service was sufficiently direct).

This case turns on whether Scribd falls within the § 512(c)(1) safe harbor. If it does, then Mrs. Scott and the other class members have no claim; if it does not, then Mrs. Scott and the other class members win.  Because this case turns on a single, common legal question that itself turns on evidence entirely about Scribd — Scribd's knowledge or notice of infringement and Scribd's direct financial benefit — it is appropriate for treatment as a class action.  At the scheduling conference, Mrs. Scott will propose that this Court establish a special scheduling order for this case allowing discovery on the safe-harbor defense to proceed first, followed by a declaratory summary judgment on the availability of that defense.  If this Court rejects Scribd's defense, it can then proceed to order class discovery and consider certification.

## II.     Scribd's Objections to Certification Are Premature.

### A.     Rule 12(f) cannot be used to strike class-action allegations on the ground that the case does not satisfy Rule 23.

Defendant Scribd moves to strike the class-action allegations in Mrs. Scott's complaint and, in the alternative, to deny certification, under Rule 12(f).

*See Id.* at 7 ("As Plaintiff's complaint demonstrates that a class action cannot be maintained on the facts alleged, the Court may strike the class allegations pursuant to Federal Rule of Civil Procedure 12(f)."). Rule 12(f) permits a court to strike allegations that are "redundant, immaterial, impertinent, or scandalous." But Defendants' arguments, even if true, show only that this case does not meet the requirements for certification under Rule 23. That certification may ultimately prove inappropriate does not render class-action allegations "redundant, immaterial, impertinent, or scandalous." Just as a defense that is ultimately rejected on the merits remains "material," so too are class-action allegations material whatever the ultimate decision under Rule 23 may be.[3]

Neither the Fifth Circuit nor any other circuit has considered whether Rule 12(f) can be used in this manner. The one case cited by Scribd was a case in which no plaintiff responded to the motion to strike. *See Read v. Input/Output, Inc.*, No. H-05-0108, 2005 WL 206179 at *2 (S.D. Tex.). In the only other Texas case that exists, the plaintiff did not argue and the district court did not reach the procedural question whether Rule 12(f) can be used as a kind of Rule 12(b)(6) for class-action allegations. *See Gloria v. Allstate County Mutual Insurance Co.*, 2000 WL 34754563 at *8–*9 (W.D. Tex. 2000) (striking class

---

[3] *Cf. Hibbs-Rines v. Seagate Technologies, LLC*, 2009 WL 513496 at *2 (N.D. Cal. 2009) ("a motion to strike should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation").

allegations because, among other reasons, "plaintiffs . . . lack standing and have no cause of action").  There is no authority in this Court for striking class-action allegations under 12(f).

Although district courts elsewhere are divided, the better approach is to require that Scribd raise its objections to certification either in response to a motion to certify or in a motion for summary judgment.  *See, e.g., Harvey v. Lake Buena Vista Resort, LLC*, 568 F. Supp. 2d 1354, 1360 (M.D. Fla. 2008) (denying motion to strike under Rule 12(f) in favor of consideration on motion for summary judgment) (quoting Charles Alan Wright et al., Federal Practice and Procedure: Civil § 1380 (2d ed. 1990)); *Burke v. Mesta Machine Co.*, 5 F.R.D. 134, 138–39 (W.D. Pa. 1946) ("A motion to strike was never intended to furnish an opportunity for the determination of disputed and substantial questions of law.").  Scribd's motion is based only on Rule 12(f).

Courts have repeatedly held that — barring exceptional circumstances like those in *Read*, where the plaintiffs simply failed to file a response to the motion to strike — certification should not be decided on a motion to strike under Rule 12(f).  *Hibbs-Rine v. Seagate Technologies, LLC*, 2009 WL 513496 at *3 (N.D. Cal.) (collecting cases) ("[M]otions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety"); *Nguyen v. St. Paul Travelers Insurance Co.*, Civil Action No. 06-4130, 2009 WL 23677 at *2 (E.D. La.) ("plaintiffs have cited

10

no case that applies rule 12(f) to strike class allegations"); *Cole v. Asurion Corp.*, 2008 WL 5423859 at *13–14 (C.D. Cal.) ("the Court chooses to consider these arguments in connection with Plaintiff's motion for class certification").

Deferring a certification decision until Plaintiff files a motion to certify or Defendant files a motion for summary judgment has the advantage that this Court will not be required to consider Scribd's objections to certification piecemeal. *See* M. at 10 (reserving objections under Rule 23(a) for later response to motion to certify); *Vizena v. Union Pacific R.R. Co.*, 360 F.3d 496, 503 (5th Cir. 2004) (expressing preference that district court rule on all aspects of certification at once to prevent multiple interlocutory appeals). Moreover, this Court will then have the factual record it needs to make findings of fact on certification, as required by the Fifth Circuit, *see, e.g., Unger v. Amedisys Inc.*, 401 F.3d 316, 320–21 (5th Cir. 2005) ("The plain text of Rule 23 requires the court to 'find,' not merely assume, the facts favoring class certification.") (noting that discovery may be necessary before making this determination), and the parties will have the opportunity to prepare and submit a factual record adequate to allow the Fifth Circuit to review this Court's certification decision on interlocutory appeal.

Because Rule 12(f) is not the appropriate vehicle through which to object to class-action allegations on the pleadings,[4] Mrs. Scott respectfully requests that this Court deny Scribd's motion in full.

### B.    Discovery is necessary to decide on Scribd's objections to certification.

Although a judgment on the pleadings about certification may be appropriate in some cases, it is not appropriate where the defendant's objections to certification turn on factual questions and the parties have had no chance to build a complete factual record on these questions through discovery.  In ruling on certification, the district court must make findings of fact.  *See Oscar Private Equity Investments v. Allegiance Telecom, Inc.*, 487 F.3d 261, 267–69 (5th Cir. 2007) (in recognition of this, Rule 23 was amended to provide that the decision on certification need only be made at "an early practicable time," not "as soon as practicable"); *Unger*, 401 F.3d at 320–21; *In re Enron Corp. Securities*, 529 F. Supp. 2d 644, 670 71, 670 n.38 (S.D. Tex. 2006) (Harmon, J.).  "To assist the court in this process it may sanction controlled discovery at the certification stage."  *Unger*, 401 F.3d at 321.  Ruling on certification before the necessary discovery and fact-finding has taken place is reversible error.  *See Rivera v. Wyeth–Ayerst Laboratories*, 283 F.3d 315, 317–18 (5th Cir. 2002).

---

[4] Scribd has not sought judgment on the pleadings under Rule 12(c) or an order crafting the class under Rule 23(d)(1)(D).  *See* R. at 7 (relying only on Rule 12(f)).

Scribd's objections to certification turn on factual questions.   For example, in opposition to 23(b)(1) certification, Scribd argues that "class members cannot be . . . treated alike."  M. at 12.  Mrs. Scott thinks it likely and has pled that Scribd's uniform policies and technologies (conversion of copyrighted works into iPaper, the addition of advertising, the failure to heed copyright notices in uploaded works, the inclusion of works in the filter, etc.) are what lead to copyright infringement and that the class members are entitled to an injunction requiring Scribd to alter these policies or technologies.  Complaint at ¶¶ 3, 12 13, 15 34, 37 39, Prayer for Relief.   Discovery is necessary to determine who is right on this question and to allow both parties to make a complete record for appellate review.

To take another example, Scribd suggests that individualized questions about copyright ownership (whether a particular putative class member actually owns the copyright in the work in question) might make 23(b)(3) certification inappropriate.  M. at 24 25.  But Scribd has offered no evidence or factual allegations in its Answer that suggest that there is any factual basis for this hypothetical set of defenses.  Proving ownership of a copyrighted work like a book is both objective and routine: there is a copyright registration and, typically, a letter from the publisher confirming that the plaintiff owns the copyright.  This is the sort of evidence that class members can easily attach to their notices of claim and to which there is little possible response.  Discovery

is necessary to see what evidence, if any, Scribd has that ownership would be contested in many cases.

To take a final example, Scribd contends that individualized determinations on infringement and Scribd's state of mind might make 23(b)(3) certification inappropriate.  M. at 26–28.  But, again, whether this is so depends on what discovery reveals.  Mrs. Scott has pled, and Scribd's public statements make clear, that Scribd collects information about who uploaded each work and how frequently each work was viewed and downloaded.  Complaint at ¶ 9. With this evidence, infringement can be proved on a class-wide basis. Moreover, as to whether the willful nature of Scribd's infringement will be an individualized issue, Mrs. Scott has pled, and Scribd's public statements confirm, that Scribd had knowledge of rampant copyright infringement on www.scribd.com and that Scribd ignored specific copyright notices in copyrighted works like *Stocks and Bonds*.  Complaint at ¶ 14, 21–22.

Because discovery is necessary for this Court to make the required findings of fact on certification and to allow both parties to make a complete factual record for appellate review, Scribd's pre-discovery, pre-scheduling conference motion to strike should be denied.

## III.   Scribd's Objections to Certification Lack Merit.

Scribd raises several limited objections to certification under the three alternative subparts of Rule 23(b).  Because this is the response to Scribd's

motion to strike and not a cross motion to certify, we will address only Scribd's specific objections and not the requirements for certification more generally. In particular, because "Scribd does not in these papers contest Plaintiff's compliance with Rule 23(a)," M. at 10, we need not address numerosity, commonality, typicality, or adequacy of representation. *See Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008) (listing these as the four requirements of Rule 23(a)).

A.    **The standard of review is the same as under Rule 12(b)(6).**

If this Court decides to reach the merits of Scribd's objections to certification, then the standard of review to be applied is the same as on a motion to dismiss under Rule 12(b)(6). *See Barasich v. Shell Pipeline Company, LP*, Civil Action No. 05–4180, 2008 WL 64688611 at *2 (E.D. La.) ("Courts apply the same standard in ruling on a motion to strike under Rule 12(f) and a motion for judgment on the pleadings under Rule 12(c) as in determining a motion to dismiss under Rule 12(b)(6)."). The Court must take all plausible factual allegations in Mrs. Scott's complaint as true and may grant Scribd's motion to strike only if these facts, taken as true, do not satisfy the requirements of Rule 23. Although Scribd never states this standard expressly, Scribd seems to agree that it applies. *See* M. at 7 ("Plaintiff's complaint demonstrates that a class action cannot be maintained on the facts alleged"), 10 ("limited to evidence cited in Plaintiff's Complaint"). If Mrs. Scott has pled plausible facts that,

taken as true, satisfy the requirements of Rule 23, then Scribd's motion must be denied.

### B. Rule 23(b)(1) applies because different injunctions in separate cases could subject Scribd to incompatible standards of conduct.

Rule 23(b)(1)(A) provides:

> A class action may be maintained if . . . prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

Fed. R. Civ. P. 23(b)(1)(A). A class action is appropriate under this rule if separate actions against Scribd would give rise to the risk that different courts would issue injunctions against Scribd requiring different and inconsistent conduct. *See, e.g., In re Enron Corp.*, No. MDL 1446, Civil Action No. H-01-3913, 2006 WL 1662596 at *15, *19 n.26 (S.D. Tex.) (Harmon, J.). Such injunctions would come about if the different courts disagreed about class-wide questions of law, such as whether Scribd qualifies for the § 512(c) safe harbor and whether particular acts (iPaper, the copyright filter, etc.) constitute infringement.

There is a real risk that separate actions would result in conflicting injunctions. For example, if courts disagreed about whether Scribd's inclusion of copyrighted works in its copyright filter constitutes copyright infringement, one court might enjoin Scribd to use the filter always, while another court

might enjoin Scribd to cease using the filter at all.  *See, e.g., Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 372 (S.D. Miss. 2003) ("At stake is how Tower could act prospectively if confronted with conflicting findings, including conflicting court-ordered plans establishing the future policies and practices to be followed.  Such overriding questions are what led this Court to conclude 'this controversy squarely falls under Rule 23(b)(1)(A).'").  The Fifth Circuit has held that the risk of "injunctive relief seeking to modify . . . business practices," *Smith v. Crystian*, 91 Fed. Appx. 952, 954 (5th Cir. 2004) (unpublished), in cases like this one justifies certification under Rule 23(b)(1)(A).

Scribd's argument to the contrary is that any injunctive relief would be limited to "future infringement of the class member's particular works," and so would not apply to the class generally.  M. at 12.  Even if courts disagreed about what conduct was to be enjoined, Scribd contends that "there is nothing Scribd could be ordered to do for one class member that would preclude it from taking the opposite action with regard to another class member." *Id.*  But, just as the courts in *Tower Loan* and *Crystian* concluded, because Mrs. Scott challenges copyright infringement arising out of Scribd's company-wide practices and policies, there is indeed a risk that injunctions in individual cases will conflict.  Scribd cannot both maintain its filter and shut it down; it cannot both convert works to iPaper and not do so; it cannot adopt twenty different

17

policies for how to verify that users uploading copyrighted material are authorized to do so.

### C. Hybrid certification under Rule 23(b)(2) is appropriate because minimum statutory damages flow automatically from the common questions of law that determine liability.

Rule 23(b)(2) provides:

> A class action may be maintained . . . if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b)(2).  A class action is appropriate under this rule because Mrs. Scott seeks injunctive and declaratory relief on the ground of Scribd actions that affect all class members in the same way.  Scribd's decisions to accept uploads of copyrighted works without verifying copyright ownership and regardless of prominently displayed copyright notices, convert copyrighted works to iPaper, use copyrighted works to generate advertising dollars, and include copyrighted works in its filter are all examples of Scribd acting "on grounds that apply generally to the class" and that justify "final injunctive relief or corresponding declaratory relief . . . respecting the class as a whole."

Scribd's only objection to certification under Rule 23(b)(2) is that the plaintiffs' claims for monetary relief are not "incidental" to their claims for declaratory or injunctive relief because they do not flow directly from a determination of liability.  M. at 13 15. Unlike in the cases that Scribd cites, however, damages in this case do flow automatically from a finding of liability.

Under the Copyright Act, statutory damages of at least $750 flow automatically from a finding of liability.  *See* 17 U.S.C. § 504(c)(1) ("an award of statutory damages . . . in a sum of not less than $750").  Once liability is established, no further individualized questions need be answered to entitle each plaintiff to statutory damages of $750 per work infringed.

None of Scribd's cases involved statutory damages.  They each involved ordinary damages theories that required individualized determinations following the class-wide determinations on liability: antitrust damages in *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 307 08 (5th Cir. 2003); punitive damages and damages for subjective, intangible injuries in *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 417 18 (5th Cir. 1998); the amount of money paid to Countrywide for the unauthorized practice of law in each particular case in *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 744 45 (5th Cir. 2003); and personal-injury damages involving issues of medical causation in *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 602 (5th Cir. 2006).  Because damages are automatic in this case, but were not in Scribd's cases, these cases are inapposite.

It is certainly true that individual plaintiffs can elect actual damages and that, even if an individual plaintiff elects statutory damages, actual damages are relevant to setting the amount of statutory damages above the minimum.  Mrs. Scott would propose (and will move, following discovery) for so-called hybrid

certification, under which liability and minimum statutory damages are certified under Rule 23(b)(2) and any plaintiffs who wish to seek higher statutory damages may opt out under Rule 23(b)(3). *See, e.g., Reeb v. Ohio Dep't of Rehabilitation and Correction*, 435 F.3d 639, 658 (6th Cir. 2006) ("The solution may be to . . . grant the plaintiffs opt-out rights with regards to their claims for money damages. . . . This would result in the certification of a hybrid class action under Rule (b)(2) and (b)(3)."); *Thomas v. Albright*, 139 F.3d 227, 234 35 (D.C. Cir. 1998) (same); *Holmes v. Continental Can Co.*, 706 F.2d 1144, 1156 57, 1156 n.9 (11th Cir. 1983) (same); *Kyriazi v. Western Elec. Co.*, 647 F.2d 388, 393 95 (3d Cir. 1981) (same).

The Fifth Circuit has joined the Third, Sixth, Eleventh, and D.C. Circuits in recognizing hybrid class actions. In *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 418 19 (5th Cir. 1998), the Fifth Circuit acknowledged the existence of hybrid class actions, but rejected the one there proposed because there were individualized issues even as to liability. In the case at bar, not only liability but a minimum amount of statutory damages can be decided on class-wide proof. Thus, this case is appropriate for hybrid (b)(2) certification. *See, e.g., Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 453 (N.D. Cal. 1994) (claim for minimum statutory damages under statute guaranteeing access to disabled persons was certifiable under Rule 23(b)(2)); *Parker v. Time Warner Entertainment Co., L.P.*, 198 F.R.D. 374, 379 (E.D.N.Y. 2001) ("monetary relief

*was* found to be incidental . . . [where] liability on the part of defendant entitled a class of plaintiffs to a statutorily mandated damage award").

Because Scribd simply does not address the propriety of hybrid certification under Rule 23(b)(2) in its motion to strike, that motion must be denied as to the Rule 23(b)(2) class allegations.

### D.    Scribd's objections to certification under Rule 23(b)(3) are unpersuasive.

Scribd raises a whole flurry of objections to certification under Rule 23. We consider each in turn.

#### 1.    A class action would be superior to individual actions.

##### a.    The existence of statutory damages and fee-shifting provision in the Copyright Act does not bar a class action.

Scribd argues that because the Copyright Act provides for statutory damages and fee shifting, individual plaintiffs have an adequate incentive to sue and a class action is therefore not superior to individual trials.  M. at 17–18.  This sweeps much too broadly.  Case after case has been certified in which the plaintiffs seek statutory damages. *See, e.g., Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1306 (9th Cir. 1990) (statutory damages counted in favor of certification, not against); *Beaudry v. TeleCheck Services, Inc.*, 579 F.3d 702, 706 (6th Cir. 2009) (same); *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1164 (7th Cir. 1974) (rejecting "argument that the incentive for individual litigation [statutory damages] precludes class action litigation"); *Arnold*, 158

21

F.R.D. at 453 (N.D. Cal. 1994) (certifying statutory-damages class); *Chakejian v. Equifax Information Services*, 256 F.R.D. 492, 500 (E.D. Pa. 2009) (same); *In re Napster, Inc. Copyright Litigation*, 2005 WL 1287611 at *9 *10 (N.D. Cal.) ("nothing in Ninth Circuit precedent suggests that the availability of statutory damages raises a *per se* bar to class certification"); *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 198 F.R.D. 503, 506 (N.D. Ill. 2001) (certifying statutory-damages class).  The case at bar is no different.

Whether statutory damages and fee shifting are available is relevant to determining whether individual plaintiffs have an adequate incentive to sue, but it is not dispositive.  In the cases that Scribd cites, the causes of action were under well-established law: Title VII in *Riley v. Compucom Systems, Inc.*, No. 398-cv-1876-L, 2000 WL 343189 at *1 (N.D. Tex.); the Fair Credit Reporting Act in *Villagran v. Central Ford, Inc.*, 524 F. Supp. 2d 866, 868 (S.D. Tex. 2007); and failure to disclose the addictive properties of nicotine in cigarettes in *Castano v. American Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996).  By contrast, in this case, liability for all plaintiffs depends on the legal interpretation of the § 512(c) safe-harbor provision, an obscure, relatively recent, and rarely litigated section of the Copyright Act.  It would be too much to expect individuals to litigate a complicated legal question like this for statutory damages that may be as low as $750.  Only one such case has been filed so far: *Williams v. Scribd Inc.*, No. 09-

cv-1836-LAB, pending in the United States District Court for the Southern District of California.

            **b.**     **The possibility of an "annihilating" award as a result of aggregating claims for statutory damages is not a reason to deny certification.**

Scribd contends that statutory damages under the Copyright Act, when aggregated in a class action, would be "annihilating" and that, therefore, a class action is inferior to individual trials.  M. at 18–20.  The fact that Scribd violated the Copyright Act so often that holding Scribd responsible for these violations using the remedies prescribed by Congress would be "annihilating" is not a factor that this Court should consider in deciding whether to certify a class. There is no such thing as too big to sue: it cannot be that if one violates a statute under which statutory damages are a remedy sufficiently often, suddenly one gains immunity from class actions.

Scribd cites no case from the Fifth Circuit or any district court in Texas for the proposition that aggregation of statutory damages in class actions justifies refusing to certify a class.  Scribd's principal case, *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 228 (9th Cir. 1974), involved a class of defendants realtors such that each defendant was to be jointly and severally liable for antitrust treble damages assessed against all the other realtors.  The "ad absurdum result" that moved the Ninth Circuit was not aggregation of multiple plaintiffs' claims against a single defendant, but the notion that "the sole

23

enterprise real broker with a small suburban business . . . [who] becomes obligated to pay $3,000 as treble damages" might, as a result of the defendant class, become "obligated legally to pay $750 million," the sum of treble damages against the defendant class. *Id.* at 235. Here, of course, Scribd itself engaged in all the conduct that would be redressed by statutory damages. The problem in *Kline* of a defendant being responsible for other defendants' wrongs as a result of class certification is simply not present.

Scribd's other cases concern situations where the plaintiffs had suffered no actual damages. The suits were for technical violations of statutes, like printing credit-card expiration dates on restaurant receipts in violation of the Fair and Accurate Credit Transactions Act (FACTA) or failing to show a "nominal annual percentage rate" on a statement showing no interest charge in violation of the Truth in Lending Act (TILA). *See Seig v. Yard House Rancho Cucamonga, LLC*, 2007 WL 6894503 at *4 *5 (C.D. Cal. 2007) ("Plaintiff has not suffered, nor does he seek damages for any actual damage, such as identity theft"); *Ratner v. Chemical Bank of New York Trust Co.*, 54 F.R.D. 412, 416 (S.D.N.Y. 1972) (damages were "unrelated to any damage to the purported class or to any benefit to defendant"); *In re Trans Union Corp. Privacy Litigation*, 211 F.R.D. 328, 350 (N.D. Ill. 2002) ("First, the most important factor in *Haynes* was the allegation of actual damages. . . . In the instant case, no actual damages are alleged."); *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255, 1255 n.5 (11th

Cir. 2003) (declining to reach issue, but emphasizing that "the plaintiffs suffered no economic harm"); *Hillis v. Equifax Consumer Services, Inc.*, 237 F.R.D. 491, 505 (N.D. Ga. 2006) ("Plaintiff has exhibited little if any actual damages").

Unlike in Scribd's cases, Mrs. Scott and every other member of the class has suffered actual damages.   Mrs. Scott's book, *Stocks and Bonds*, was downloaded more than 100 times, according to Scribd's own statistics.  If Mrs. Scott's book cost $15 at the bookstore, this is a loss of at least $1500, which is double the minimum statutory-damages award of $750.   Here, unlike in Scribd's cases, the plaintiffs have suffered substantial actual damages. Moreover, the defendants in Scribd's cases had committed technical violations that did not benefit them; by contrast, Scribd's copyright infringement has benefited it tremendously.  Scribd collects a direct financial benefit through advertising and a further benefit by attracting users to its website who come there to view copyrighted works but wind up viewing other works (and other advertising) too.  Scribd's cases are inapposite because this case features real injuries caused by the defendant and only the defendant through acts undertaken by the defendant for its commercial gain.

The Supreme Court considered and rejected an argument similar to Scribd's in *Reiter v. Sonotone Corp.*  The Court rejected the argument that consumer antitrust class actions should not be allowed because the cost of defending them might prove "ruinous" by saying that this argument should

have been directed to Congress. *See Reiter v. Sonotone Corp*, 442 U.S. 330, 334 35 (1979)("These are not unimportant considerations, but they are policy considerations more properly addressed to Congress than to this Court."). The Fifth Circuit held similarly in rejecting an "annihilating damages" argument against certification where the plaintiffs suffered actual damages and the violation was not technical. *See Roper v. Consure, Inc.*, 578 F.2d 1106, 1114 (5th Cir. 1978) ("We find no evidence that Congress otherwise sought to protect the net worth of national banks against damaging suits if, in fact, they overcharged their customers."); *see also Califano v. Yamasaki*, 442 U.S. 682, 700 (1979) ("In the absence of a direct expression by Congress of its intent to depart from the usual course of trying 'all suits of a civil nature' under the Rules established for that purpose, class relief is appropriate in civil actions brought in federal court"); *Ashby v. Farmer's Insurance Co. of Oregon*, No. CV-01-1446-BR, 2004 WL 2359968 at *23 (D. Ore.) ("This Court, however, is not persuaded it should follow a policy to protect defendants from potentially serious financial consequences based on their substantive violation of consumer protection statutes enacted by Congress.").

In the Napster music-sharing case    Scribd is to books and other printed works what Napster, KaZaA, and their ilk were to music    the Northern District of California specifically addressed and rejected Scribd's

"annihilating damages" argument as a reason to deny certification.  There is nothing special about class actions:

> [I]t is far from clear why class actions should be singled out for heightened scrutiny under such a theory.  Indeed, the sum of the actual damages suffered by a class of plaintiffs will be the same regardless of whether their claims are prosecuted as a single class action or as a myriad of individual suits.  In the absence of any theory to explain why the amount of statutory damages awarded would expand faster than the size of the class, **the assumption that class action treatment exacerbates concerns about excessive damages awards is** either a product of mathematical error or **based on the assumption that defendants who injure large numbers of individuals are less culpable than those who spread the effects of their unlawful conduct less widely**.  While the former could be chalked up to the mathematical illiteracy of the legal profession, **the latter rationale is clearly incompatible with the purpose of Rule 23**, which is in part intended to serve as vehicle for redressing widely dispersed harm that might otherwise go uncompensated.  Under either of these premises, the conclusion that class action treatment might somehow influence the proportionality of a statutory damages award is logically flawed.

*In re Napster, Inc. Copyright Litigation*, No. MDL-00-1369-MHP, 2005 WL 1287611 at *11 (N.D. Cal.) (emphasis added).

Because statutory-damages cases like this one can be tried as class actions despite the potentially large total damage award that might result, Scribd's motion to strike should be denied on this point.

> c.    **Scribd's constitutional challenge to the statutory-damages provision of the Copyright Act is not ripe.**

Scribd takes its "annihilating damages" argument one step further by arguing that statutory damages under the Copyright Act would actually be

unconstitutional as applied to Scribd because in violation of the Due Process Clause of the Fifth Amendment.  M. at 20 23 ("a massive award of statutory damages would also violate Scribd's due process rights").  Scribd failed to file a notice of constitutional question and give notice of its constitutional challenge to the Attorney General of the United States, as required by Rule 5.1(a).

Even Scribd cannot identify any case in which any court has held that statutory damages under the Copyright Act are unconstitutional punitive damages under the Due Process Clause.  The cases that Scribd cites are all part of the Recording Industry Association of America (RIAA) campaign against those who download music online. In each case, the court refused to strike the defense of unconstitutionality; in no case did the court decide the merits of that defense.  *See* M. at 21 22.  Only two of the RIAA cases have gone to trial so far. In only one of them has the constitutional objection been fully briefed on post-verdict motions.  We are counsel in that case, *Capitol Records et al. v. Thomas*, pending in the United States District Court for the District of Minnesota. Judge Davis has not yet ruled on the constitutional objection.

Scribd's constitutional objection is premature.  As the Second Circuit held in Scribd's principal case, *Parker*, a constitutional objection that damages are excessive under the Due Process Clause should be raised after a judgment has been entered.  Only then can the judge determine whether an award of statutory damages is so out of proportion to the actual damages suffered by the

plaintiff that the award is unconstitutional.   In vacating the district court

decision on which Scribd relies, the Second Circuit wrote:

> At this point in this case, however, these concerns remain
> hypothetical.  There has been no class certification motion filed
> nor any actual evidence presented that raises a reasonable
> possibility that principles of due process may restrict an ultimate
> damages award.  Accordingly, we decline to consider what limits
> the due process clause may impose.

*Parker v. Time Warner Entertainment Co., L.P.*, 331 F.3d 13, 22 (2d Cir. 2003); *see*

*also id.* at 26 n.4 (Newman, J., concurring) (rejecting *Ratner*).  Just as the Second

Circuit held in *Parker*, Scribd cannot raise its constitutional objection now, but

must wait until the objectionable damages award it fears becomes a reality.

A further reason to defer consideration of a constitutional challenge to

statutory damages is the doctrine of constitutional avoidance, under which

courts should refrain from deciding constitutional questions until it is plainly

necessary to do so.  *See Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485

U.S. 439, 445 (1988).   Those courts that have been asked to consider

constitutional challenges to statutory damages earlier have uniformly refused to

do so until the jury hands down an actual statutory-damages judgment.  *See,*

*e.g., Capitol Records, Inc. v. Alaujan*, 626 F. Supp. 2d 152, 154 (D. Mass. 2009)

("In light of this principle [of constitutional avoidance], together with the

substantial practical difficulties of comparing actual and statutory damages

without a factual record, the Court will decide this constitutional question only

if and when a jury awards damages against Joel Tenenbaum.  The due process

challenge is deferred until that time."); *see also Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) (constitutional challenge by post-verdict motion); *Harris v. City of Virginia Beach*, 923 F. Supp. 869, 872 (E.D. Va. 1996) (same).

Because Scribd's constitutional objection is premature, Scribd's motion should be denied on this point.

### 2.    Class-wide questions predominate.

#### a.    Mini-trials on copyright ownership are not necessary.

Scribd contends that individualized determinations of copyright ownership would predominate.  M. at 24 25.  Mrs. Scott agrees that copyright ownership is an element of an infringement claim.  But Mrs. Scott submits that proof of ownership is typically as simple as submitting a copyright registration and, perhaps, a letter from the publisher confirming the author's ownership of the copyright.  Scribd has offered no evidence that it would be able to contest such evidence of copyright ownership.

The one case that Scribd cites, an unpublished decision from 1995, rejected certification because there was no common course of conduct by the defendant applicable to the plaintiffs.  *See WB Music Corp. v. Rykodisc, Inc.*, 1995 WL 631690 at *6 (E.D. Pa. 1995) ("there is no common element which each owner would need to prove").  Here, there are common questions, the most important of which is whether Scribd qualifies for the § 512(c) safe harbor.

Because these questions turn on class-wide proof about Scribd's behavior, and because liability turns on these questions, they are common questions that predominate and therefore justify certification.

If Scribd were right that the mere fact that ownership is an element of copyright infringement defeats predominance, then a copyright-infringement class action could never exist.  But courts have in fact certified many copyright cases as class actions.  *See, e.g., Ryan v. Carl Corp.*, 1999 WL 16320 at \*8 (N.D. Cal.) (certifying copyright class); *David v. Showtime/The Movie Channel, Inc.*, 697 F. Supp. 752, 756 57 (S.D.N.Y. 1988) (same).  Scribd's argument should be rejected because it seeks to prove too much.

Finally, Scribd's objection that individual proof of copyright ownership is required is not actually a predominance objection, but rather an objection to whether the class, as defined by Mrs. Scott's complaint, is reasonably ascertainable.  This is because the class is defined to include "author[s] who own[] a valid, registered copyright."  Complaint at ¶ 45.  Under this definition, whether a putative class member owns his or her copyrighted work is a question of class membership, not a question of the merits of a class member's claim.

"While Rule 23(a) does not expressly require that a class be definite in order to be certified, a requirement that there be an identifiable aggrieved class has been implied by the courts."  *Fears v. Wilhelmina Model Agency, Inc.*, 2003

WL 21659373 at *2 (S.D.N.Y. 2003) (*quoting In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litig.*, 209 F.R.D. 323, 336 (S.D.N.Y. 2002)). "[A]scertainability of the class is an issue distinct from the predominance requirement for a (b)(3) class." *In re Initial Public Offering Securities Litigation*, 471 F.3d 24, 44–45 (2d Cir. 2006).  Because Scribd decided not to object to certification under Rule 23(a), M. at 10, Scribd cannot raise its objection regarding individualized proof of ownership.

Moreover, on the merits, the test for whether a class is ascertainable is not whether individual proof is required   individual proof is always required to show that a putative class member in fact is a class member   but rather whether the class is defined such that this proof is objective in nature.  A class is reasonably ascertainable "if its members can be ascertained by reference to objective criteria" as opposed to "a class . . . defined by state of mind." *Chiang v. Veneman*, 385 F.3d 256, 271 (3d Cir. 2004); *Stoffels v. SBC Communications, Inc.*, 238 F.R.D. 446, 451 (W.D. Tex. 2006); *Fears*, 2003 WL 21659373 at *2 (S.D.N.Y. 2003).  "An identifiable class exists if its members can be ascertained by reference to objective criteria." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 298–99 (W.D. Tex. 2007) (also approving self reporting where class was unidentifiable until possible members self-reported their race).

Because the test for ownership is objective, not subjective, and because ownership can be proved through a trivial proof-of-claim form (with copyright

registration and other title documentation attached) of the sort used in class actions all the time, Scribd's motion should be denied on this point.

### b.  Mini-trials on infringement are not necessary.

Scribd argues that individualized questions about infringement predominate.  M. at 25–27.  But it can identify no such questions.  Scribd argues that it "has no means of knowing which of those documents [uploaded to its website] have been registered for copyright protection or uploaded by persons other than the copyright owner."  M. at 26.  This is precisely the complaint: because Scribd lacks this knowledge, and has made no attempt to obtain it, it is engaged in widespread copyright infringement.  If Scribd cannot show that the persons who uploaded copyrighted works to its website were authorized to do so by the copyright owner, then it cannot make out any affirmative defense of license.  This does not create individualized questions on infringement; rather, it removes a potential individualized defense.

Scribd further argues, citing music-downloading cases, that "Plaintiffs would still need to establish on a work-by-work basis that each work has been downloaded, rather than merely made available."  M. at 27.  But the music-downloading cases are cases where, absent a download, the alleged infringer did not publish the copyrighted sound recordings in question.  Here, whether or not any user ultimately downloads a copy of a copyrighted work, Scribd publishes that copyrighted work by posting it on the Internet at

33

www.scribd.com.  Moreover, Scribd records the number of downloads of each of the works that it publishes.  Complaint at ¶ 9 (Scribd's own statistics showed more than 100 downloads for *Stocks and Bonds*).  Using this information, downloads can be proved on an objective, class-wide basis.

c.  <strong>Mini-trials on willfulness are not necessary.</strong>

Scribd argues that individualized questions "also exist with respect to Scribd's knowledge of the alleged infringement of each class member's works." M. at 27 28.  But the fact that Scribd was aware of its own copyright infringement can be established by classwide proof.  Already, the complaint collects multiple Scribd press statements in which Scribd acknowledges that copyright infringement "often happens" on www.scribd.com.  Complaint at ¶¶ 21 22.  Many copyrighted works that Scribd publishes illegally, including *Stocks and Bonds*, include the original copyright notice page, which put Scribd on notice that it was dealing with a copyrighted work.  If what Scribd did constitutes copyright infringement    that is, if Scribd falls outside the § 512(c) safe harbor    there can be no question that that copyright infringement was willful.  It was, and is, Scribd's business.

## IV.  CONCLUSION

This case is ultimately about whether Congress, when it enacted the DMCA safe harbor on which Scribd relies, really intended to shift from publishers like Scribd to authors like Mrs. Scott the duty to police the Internet for copyright infringement.  For, if Scribd is correct that the law requires it to

take no steps to prevent illegal publication of copyrighted works until the copyright owner sees the infringement and sends in a letter, Mrs. Scott will need to police not only Scribd, but all the competitors who will sprout up, like weeds, in the shade of § 512(c).  This is not what Congress intended.

In any event, the present motion should be denied because Scribd's various objections to class certification lack merit, are premature, or both.  Mrs. Scott respectfully submits that this Court should deny the present motion and establish, at the scheduling conference, a sensible and orderly plan for the litigation of this case in stages    beginning with discovery and summary judgment on § 512(c).

35

Dated: November 30, 2009

Respectfully submitted,


/s/ K.A.D. Camara_____
K.A.D. Camara
Southern District Bar No. 870498
Texas Bar No. 24062646
camara@camarasibley.com

Camara & Sibley LLP
2339 University Boulevard
Houston, Texas  77005
713-893-7973
713-583-1131 (fax)

*Attorney in Charge for the Plaintiff*

36

## CERTIFICATE OF SERVICE

I hereby certify that I served this Response on opposing counsel through the Court's ECF system on November 30, 2009.

/s/ K.A.D. Camara_____
K.A.D. Camara